**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **CLAIRE DUBE,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. SA-11-CA-0354-XR** |
| | § | |
| **TEXAS HEALTH AND HUMAN** | § | |
| **SERVICES COMMISSION and** | § | |
| **THOMAS M. SUEHS, Executive** | § | |
| **Commissioner of the Texas Health and** | § | |
| **Human Services Commission,** | § | |
| **Defendants.** | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE XAVIER RODRIGUEZ, UNITED STATES DISTRICT JUDGE:

Now comes CLAIRE DUBE, the Plaintiff in the above-styled and numbered cause, by and through her undersigned counsel, and respectfully submits this her Response to Defendants' Motion for Summary Judgment, filed herein on June 1, 2012. As and for her Response, the Plaintiff, Ms. Dube, would respectfully show this Honorable Court the following:

**NATURE OF THE CASE**

(1)     As Plaintiff's First Amended Complaint reflects, CLAIRE DUBE is suing her former employer, the TEXAS HEALTH AND HUMAN SERVICES COMMISSION, and THOMAS M. SUEHS, Executive Commissioner of the Texas Health and Human Services Commission, because the Defendants dismissed her from her position as a Texas Works Advisor II because they regarded her as disabled.

The stated reason for her dismissal, which the Defendants have studiously avoided addressing in their Motion for Summary Judgment, was that Ms. Dube was "not suited" for her assigned

position.  **See** the letter dated May 13, 2012, signed by Grace Moser, Regional Director, which was marked as Exhibit 4 to Ms. Moser's deposition, attached as Exhibit K to the Affidavit of Claire Dube, attached hereto as Exhibit A.

However, in response to Ms. Dube's charge of discrimination filed with the U.S. Equal Employment Opportunity Commission (the EEOC), and in response to this lawsuit, Defendants claim that Ms. Moser did not state the real reason why Ms. Dube was fired and that the real reason is that she had exhausted her available leave.  **See** the Position Statement submitted to the EEOC by the Texas Health and Human Services Commission on October 15, 2010, attached as Exhibit C to the Affidavit of Glen D. Mangum, attached hereto as Exhibit B.  Even so, Defendants acknowledge that Ms. Dube actually exhausted her available paid leave on March 3, 2010, but was not terminated until May 13, 2010.  **See** Defendants' Motion, pp. 5-8 and Exhibit 1 to their Motion; **see also** Exhibits I and K to Ms. Dube's Affidavit, Exhibit A hereto.

On the other hand, when asked at her deposition why Claire Dube was fired, Grace Moser first testified that Ms. Dube was terminated because "She was a probationary employee who was not fit for the position."[1]  **See** the transcript of Ms. Moser's deposition, Exhibit C hereto, p. 15, ll. 10-12. But upon further questioning by counsel for Ms. Dube, Ms. Moser testified that Ms. Dube was fired

---

1. In the Errata to her deposition, Ms. Moser claims "My statement was she was not suited for her position. Please change fit to suited." **See** the Correction Page appended to the transcript of her deposition, Exhibit C hereto.  It is not clear if Ms. Moser is claiming that the transcript as originally produced does not accurately state what she testified to at the time of her deposition, or if she has some other reason for making that change, but the words "fit" and "suited" do not sound at all the same.  Perhaps a more logical explanation for Ms. Moser's correction to her deposition is that she realized her use of the word "fit" implies that she considered Ms. Dube "unfit" or "disabled."

because the Commission did not have a return to work date provided by her physician.[2]  Exhibit C, p. 21, l. 1 to p. 23, l. 20; p. 25, ll. 11-18.  She admits that she did not ask Ms. Dube to provide an estimated return to work date from her physician, and that she does not know if anyone else did. Exhibit C, p. 23, l. 21 to p. 24, l. 4.  Likewise, she does not remember asking Melissa Torres, Ms. Dube's supervisor, whether she had asked Ms. Dube for a physician's return to work statement. Exhibit C, p. 24, ll. 5-21.

It only stands to reason that, if that had been the real reason for Ms. Dube's firing, someone would have asked her to provide an estimated return to work date from her physician before making the drastic decision to fire her.

In addition, documents produced by Defendants as evidence that the Commission has fired other persons for leave exhaustion demonstrate that others who the Defendants presumably did not regard as being disabled were actually granted extended periods of leave without pay, sometimes for many months, for no good reason, before they were fired.  **See** Exhibits D and E to the Affidavit of Glen D. Mangum, Exhibit B to this Response.  Those documents also reflect that the Commission, in most of those cases, requested that the employee provide a return to work date from the employee's physician, and, only after the employee failed to respond was the employee fired.

In summary, Defendants have now, at one time or another, offered at least three (3) different reasons for Ms. Dube's termination: (a) that she was "not suited" for her position, (b) that she exhausted her available paid leave and (c) that she failed to provide a return to work date from her

---

2.  That statement is not true either.  Ms. Dube gave her supervisor, Melissa Torres, on March 29, 2010, a statement from her doctor, dated March 24, 2010, that he expected her to be able to return to work within one (1) to two (2) months.  **See** Exhibit H to Claire Dube's Affidavit, Exhibit A hereto.

physician.  None of those reasons are the true reason Ms. Dube was fired.  Ms. Dube was fired, as she has alleged, because she was regarded as being disabled.

(2)     In their Second Motion to Dismiss, which was denied by this Court on September 6, 2011, and again in their Motion for Summary Judgment, Defendants continue to obsess on the facts that Ms. Dube does not claim to be actually disabled, never told the Commission she was actually disabled, and never requested an accommodation for her disability.  Ms. Dube respectfully submits that those facts are irrelevant to any analysis of her claims herein and should not be given any consideration by this Court.  Under the Americans With Disabilities Act, as amended in 2008 by the ADA Amendments Act, an individual can establish disability discrimination in one of three ways: (a) by proving an "actual disability" - meaning a physical or mental impairment that substantially limits one or more major life activities of that individual, (b) by proving that the individual has a record of a disabling impairment, or (c) by proving that the employer regarded that individual as having such an impairment.  **See** 42 U.S.C. § 12102(1)(A) through (C).  "An individual meets the requirement of 'being regarding as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).  It is enough if the perceived impairment simply "limits" - as opposed to "substantially limits" - a major life activity.  *Id.*; **see also** 29 C.F.R. § 1630.2(g)(3), and 29 C.F.R. § 1630.2(j)(2).

Thus, the only issue in this case is whether the Defendants discharged Claire Dube because she was regarded as or perceived to be disabled.  The credible summary judgment evidence establishes that the ultimate decisionmaker, Grace Moser, regarded Ms. Dube as being disabled.  The

evidence also establishes that none of the reasons stated by the Defendants for her discharge are true. The evidence establishes that those reasons are pretextual. The Defendants refuse to acknowledge - no matter how persuasive the evidence seems to be - that the real reason Claire Dube was fired is because the Defendants, in their minds, had concluded that Ms. Dube was "damaged goods."

## THE FACTS

(3)     Claire Dube was hired by the Texas Health and Human Services Commission on or about September 14, 2009 as a Texas Works Advisor II. **See** Claire Dube's Affidavit, Exhibit A hereto; Grace Moser's Declaration, Exhibit 1 to Defendant's Motion for Summary Judgment. **See also** Ms. Dube's deposition, Exhibit 2 to Defendant's Motion for Summary Judgment, p. 190; ll. 23-25. As a Texas Works Advisor II, Ms. Dube's duties and responsibilities included interviewing clients to determine their eligibility for TANF (Temporary Assistance for Needy Families), food stamps, and/or Medicaid programs offered by the State of Texas. Ex. 2 to Defendant's Motion for Summary Judgment, p. 20; ll. 1-4; **see also** Exhibit 7 to Melissa Torres' deposition, Exhibit D hereto, and Exhibit A to Claire Dube's Affidavit, Exhibit A hereto.

Although Ms. Dube does not contest the allegation that she was a probationary employee when she was hired, she does dispute Defendants' contention that her probationary period was twelve (12) months. **See** Claire Dube's Affidavit, Exhibit A hereto. According to information that was provided to Ms. Dube at the time she was hired, the probationary period was six (6) months. **See** Ms. Dube's Affidavit, Exhibit A, and Exhibit B attached thereto. So, her probationary period actually expired on or about March 14, 2010, only eleven (11) days after she exhausted her available paid leave, but three (3) months **before she was fired**. **See also** Ms. Torres' deposition, Exhibit D hereto, p. 17, l. 15 to p. 18, l. 3.

On or about February 17, 2010, Ms. Dube began missing work.  **See** Ms. Dube's Affidavit, Exhibit A hereto, and Exhibit 3 to Defendant's Motion for Summary Judgment, p. D-000419.  On February 23, 2010, Ms. Dube informed her supervisor, Melissa Torres, that her absences from work beginning on February 17, 2010 were due to the fact that she was experiencing severe pain in her lower back.  She also advised Ms. Torres that she had an appointment to see a doctor that afternoon.  **See** Exhibit A hereto; Ex. 3 to Defendant's Motion for Summary Judgment, p. D-000420.  The next day, February 24, 2010, Ms. Dube advised Ms. Torres that her physician had referred her to a specialist for evaluation/treatment of her back pain and that she would be out of the office until further notice.  **See** Exhibit A hereto; Ex. 3 to Defendant's Motion for Summary Judgment, p. D-000420.

On Friday, March 26, 2010, Ms. Dube completed a claim for short term disability benefits, part of which was verified by Candy Phillips, a Benefits Specialist for the Commission.  **See** Exhibit A hereto, and Exhibit H thereto; **see also** Exhibit 12 to Melissa Torres' deposition, Ex. D hereto. In the "Employee's Preliminary Statement of Disability," which is part of the claim form, Ms. Dube described the symptoms of her disability as "unable to sit for long periods of time, lower back pain, spasms in the lower region of back."  *Id.*  In the "Attending Practitioner's Statement," which was also part of the claim form, Ms. Dube's orthopedic doctor, Dr. Arvo Neidre, stated that Ms. Dube's diagnosis was "lumbalgia with facet arthosis." *Id.*  Dr. Neidre described Ms. Dube's restrictions as "Unable to sit more than 30 minutes without pain."  *Id.*  He also stated that he expected Ms. Dube to be able to return to her usual work in one (1) to two (2) months.  *Id.*

Ms. Dube also called Ms. Torres on Friday, March 26, 2010, and advised her that an MRI showed that she had arthritis in her back, which was referred to as facet arthrosis, that she had been

referred to physical therapy, and that she would come into the office the following Monday, March 29, 2010, to provide Ms. Torres with a copy of the disability claim form.  **See** Exhibit A hereto; Ex. 3 to Defendant's Motion for Summary Judgment, p. D-000421.   During that same telephone conversation, Ms. Torres advised Ms. Dube that she had exhausted all of her available paid leave as of March 3, 2010 and that she was on LWOP (leave without pay). **See** Exhibit A hereto, Ms. Dube's Affidavit, and Ex. 4 to Ms. Torres' deposition, Ex. D hereto.

Ms. Torres also informed Ms. Dube that she intended to follow Commission policy and procedure by applying for additional paid leave for her from the Sick Leave Pool, because she did not qualify for FMLA leave and was not eligible for extended sick leave under the Commission's policy.  **See** Ex. 3 to Defendant's Motion for Summary Judgment, p. D-000421.

The following Monday, March 29, 2010, Ms. Dube went in to the office and hand delivered a copy of the disability claim form to Ms. Torres.  **See** Melissa Torres' deposition, Ex. D hereto, p. 75, L. 15 to p. 77, l. 8.  **See also** Ms. Dube's Affidavit, Ex. A hereto.

Ms. Torres, in turn, gave Ms. Dube a letter, signed by Ms. Torres and dated March 29, 2010, the subject line of which was "Important Policy Requirements Regarding Absence and Leave Status."  **See** Exhibit I to Ms. Dube's Affidavit, Ex. A hereto, and Exhibit 4 to Ms. Torres' deposition, Ex. D hereto.  In that letter, Ms. Torres stated to Ms. Dube "You have stated that you have been out of work due to an illness."  Of course, Ms. Torres knew that was not true at the time she wrote it because she knew that the reason Ms. Dube had been absent from work was that she had been experiencing excruciating pain in her lower back due to arthritis in her back and facet arthrosis. Ms. Torres continued, "We need acceptable documentation from your doctor, to explain why you have been out."  Of course, Ms. Torres knew why Ms. Dube had been absent from work, and also

7

had documentation in her possession from Ms. Dube's doctor explaining why she had been absent from work.  Ms. Dube had delivered the short term disability claim form to her earlier that day. Despite that fact, Ms. Torres demanded that Ms. Dube take a form known as the WH-380-E to her physician, have the form completed by her physician, and return it to her no later than 15 calendar days from the date of the letter. **See** Exhibit A hereto; Ex. 4 to Ms. Torres' deposition, Ex. D hereto. In addition, Ms. Torres advised Ms. Dube that no request for leave from the Sick Leave Pool would be submitted unless and until she returned the completed WH-380-E.  *Id.*

The WH-380-E is a U.S. Department of Labor form entitled "Certification of Health Care Provider for Employee's Serious Health Condition."  **See** Exhibit 9 to Ms. Torres' deposition, Ex. D hereto.  As it indicates on its face, the form is actually designed for use by persons seeking leave under the Family and Medical Leave Act (FMLA), but Defendants' witnesses testified that the form is also used by the Commission to determine employees' eligibility for other forms of leave, and that Ms. Dube was required to complete and return the form even though it was acknowledged that she was not eligible for FMLA leave and was not eligible for extended sick leave.  **See** Grace Moser's deposition, Exhibit C hereto, p. 18, l. 12 to p. 19, l. 10; Melissa Torres' deposition, Exhibit D hereto, p. 62, l. 17 to p. 64, l. 24.  Apparently, the only purpose of requiring Ms. Dube to complete and return the WH-380-E was to determine her eligibility for leave from the Sick Leave Pool.  **See** Ms. Torres' deposition, Ex. D, p. 64, ll. 21-24.

Nevertheless, Ms. Dube did have her physician, Dr. Neidre, complete the form, and she returned it to Ms. Torres on or about April 9, 2010.  **See** Ms. Dube's Affidavit, Ex. A hereto; Exhibit 9 to Ms. Torres' deposition, Ex. D hereto.  In that document, the WH-380-E, Dr. Neidre stated that Ms. Dube's condition had commenced on or about February 8, 2010, and that the probable duration

8

of her condition was "undetermined at this time." *Id.* Dr. Neidre also stated that Ms. Dube would require treatment visits at least twice per year due to her condition, and that she had been referred for physical therapy, the expected duration of which was also "undetermined at this time." *Id.* In response to the question, "Is the employee unable to perform any of his/her job functions due to the condition?" Dr. Neidre stated, "Yes." *Id.* Dr. Neidre also described the recovery period for Ms. Dube as "undetermined at this time." *Id.* Finally, Dr. Neidre stated Ms. Dube's diagnosis as "lumalgia with facet arthrosis." *Id.*

On April 12, 2010, Ms. Torres submitted a request for Sick Leave Pool leave on behalf of Ms. Dube (**see** Exhibit 10 to her deposition, Ex. D hereto), and, on April 22, 2010, Ms. Torres received an e-mail message from "Time, Labor and Leave" stating that Ms. Dube's request for Sick Leave Pool leave was denied because Ms. Dube's condition did not constitute a catastrophic illness or injury. **See** Exhibit 11 to Ms. Torres' deposition, Ex. D hereto. Curiously, Ms. Torres' Employee Development Notes for April 13, 2010 (9 days earlier) recite, "Received confirmation from Time and Leave on Sick Leave Pool request. Ms. Dube is not eligible for Sick leave pool." **See** Ex. 3 to Defendant's Motion for Summary Judgment, p. D-000424.

Between April 9, 2010 and May 6, 2010, there was no communication between Ms. Torres and Ms. Dube about her Sick Leave Pool request or on any other subject. On May 6, 2010, Ms. Torres finally called Ms. Dube to inform her that her Sick Leave Pool request had been denied. **See** Ex. 3 to Defendant's Motion for Summary Judgment, p. D-000425. During that conversation, Ms. Torres also advised Ms. Dube that she would be submitting paperwork requesting Ms. Dube's termination based on leave exhaustion. *Id.* In response, Ms. Dube advised Ms. Torres that she would be finishing physical therapy on May 22, 2010 and expected to obtain a release from her

doctor to return to work some time the week of May 24, 2010.  **See** Ms. Dube's Affidavit, Ex. A hereto.

But, before that could happen, the Commission terminated her employment.  On May 13, 2010, Grace Moser mailed a letter to Ms. Dube informing her that she was being terminated.  **See** Exhibit J to Ms. Dube's Affidavit.  Ex. A hereto.  Rather than stating what Defendants now allege was the real reason for Ms. Dube's termination, Ms. Moser stated to Ms. Dube in the letter that she was being terminated because she was "not suited" for her assigned position.  *Id.*[3]  As previously mentioned, Defendants have failed to even mention the letter of termination, much less attach a copy of it to their Motion.  They have studiously avoided discussing the letter and how it bears on this case.

(4)     But, before any analysis of the evidence or discussion of the law can be undertaken, one other fact needs to be mentioned.  Despite Defendants' insistence that, in terminating Claire Dube, they were only following Commission policy, they have not attached the actual policies themselves to their Motion.  Therefore, Ms. Dube is attaching hereto copies of the Commission's policies regarding Extended Sick Leave, the Sick Leave Pool, Leave Without Pay, and the Return to Work Program, all of which were identified by Ms. Torres during her deposition and were attached thereto as Exhibits 1, 2, 3, and 5, respectively.  **See** Ex. D hereto.

Ms. Dube believes that those policies are important to an analysis of the facts of this case,

---

3. During her deposition, Ms. Moser was asked, "Are you aware of any policy that states that probationary employees are not entitled to a statement of the real reasons for their termination?"  **See** Ex. C hereto, p. 25, ll. 15-18.  After answering the question by not really answering it, Ms. Moser was asked "Are you aware of any policy that states that the Commission is allowed to state reasons other than the real reasons for terminating a probationary employee?"  She finally conceded, "I am not."

especially the Leave Without Pay (LWOP) policy.

Although Defendants assert that Ms. Dube was terminated because she exhausted her available leave, what they really mean to say is that she had exhausted all **paid** leave available to her. They ignore the fact that the Commission's LWOP policy clearly states that an agency head or designee may grant employees leave without pay, including a leave of absence without pay, for up to twelve (12) months.  **See** Ex. 3 to Ms. Torres' deposition, Ex. D hereto.

In addition, when pressed to state whether any Commission policy requires that employees who (like Ms. Dube) have exhausted their available paid leave must be terminated, Defendants' witnesses either stated that they know of no such policy or could not identify the policy, even though they thought one existed.  **See** Grace Moser's deposition, Ex. C hereto, p. 34, l. 17 to p. 35, l. 4; Melissa Torres' deposition, Ex. D hereto, p. 89, l. 23 to p. 96, l. 7.  When asked why Ms. Dube could not have remained on leave without pay until her expected return to work date of May 24, 2010, none of Defendants' witnesses had an explanation.  Their only explanation is that they have never heard of that being done.  **See** Grace Moser's deposition, Ex. C, p. 35, ll. 5-15; Melissa Torres' deposition, Ex. D, p. 143, l. 8 to p. 146, l. 17.  The documents attached to Mr. Mangum's Affidavit, Exhibit B hereto, belie that contention.

The fact of the matter is that Claire Dube exhausted her available paid leave as of March 3, 2010, and yet was not discharged until May 13, 2010.  At the time she was fired, she had already been on leave without pay for approximately two and one-half (2 ½) months.  What harm could have resulted to the Commission by allowing her to remain on leave without pay for another ten (10) days or two (2) weeks?  Why didn't the decisionmakers exercise their discretion and allow her to remain on LWOP?  The answer is that they regarded Claire Dube as disabled, and feared that could mean

having to accommodate her disability for an "undetermined" period of time.  The easier solution was to simply dismiss her.

(5)      In their discussion of the Factual Background of this case, Defendants refer to Ms. Dube's status as a probationary employee and claim that she was "repeatedly counseled by her supervisors."  **See** Defendant's Motion for Summary Judgment, pp. 4-5.  Ms. Dube respectfully submits that any allegation or evidence that her supervisors "repeatedly counseled" her is irrelevant and should not be given any consideration by this Court.  Claire Dube was not discharged because of poor performance or for bad conduct.  She was allegedly discharged because she had exhausted her available leave.

Defendants also state that, as Ms. Dube's supervisors were preparing to terminate her, they discovered that she had been previously employed by the Commission and terminated during her probationary period, and had failed to disclose that fact on her application for employment in September of 2009.  **See** Defendant's Motion for Summary Judgment, p. 5.  But, Ms. Dube **did** disclose her prior employment with the Commission, so this is a non-issue.  **See** Ms. Dube's Affidavit, Exhibit A hereto, and Exhibit C thereto.  Again, Ms. Dube respectfully submits that any allegation or evidence of any alleged deception on her application is irrelevant and should not be given any consideration by this Court.  Defendants argue that, even though Ms. Dube was terminated for leave exhaustion, she could have been terminated for omitting the information about her previous employment on her application.  Ms. Dube respectfully submits that the only relevant issue before the Court is why she was actually fired - not why she could have been fired.  Defendants' reference to this issue is simply an attempt to prejudice this Court against Claire Dube for no good or relevant reason.

12

Ms. Dube also objects to certain language used at page 6 of Defendants' Motion describing Ms. Dube's supervisor, Melissa Torres, as "the sympathetic Ms. Torres." There is no evidence that Ms. Torres or anyone else had any sympathy for Ms. Dube. In fact, in describing the same event in her Employee Development Notes, Ms. Torres describes her request that Ms. Dube complete and return the WH-380-E, so that she could submit a Sick Leave Pool request on her behalf, as merely following Commission policy and procedure - as just doing her job. **See** Ex. 3 to Defendants' Motion for Summary Judgment, p. D-000421.

Finally, Ms. Dube objects to footnote 1, found at page 11 of Defendants' Motion for Summary Judgment. Defense counsel's observation of Ms. Dube at her deposition is not competent summary judgment evidence and is irrelevant anyway.

## <u>DEFENDANTS' GROUNDS FOR SUMMARY JUDGMENT</u>

(6)   Defendants have moved for summary judgment on the following grounds: (a) Ms. Dube's claim for reinstatement, brought against the Defendant Texas Health and Human Services Commission under Section 504 of the Rehabilitation Act of 1973, 25 U.S.C. § 794, and against the Executive Commissioner, the Defendant Thomas M. Suehs, under the ADA, 42 U.S.C. § 12112, is moot; (b) Ms. Dube's arthritis is not a disability and she could not have been objectively regarded as disabled; (c) Ms. Dube has no evidence that the Commission regarded her as disabled; and (d) Ms. Dube cannot show that the stated reason for her termination is pretextual or a disguise for discrimination.[4]

---

4.   Although Defendants state this ground somewhat differently, it appears from the discussion of this ground that Defendants are claiming that Ms. Dube cannot prove pretext. As a parenthetical, Defendants also allege, "In any event, she would have been readily accommodated if she had asked." Ms. Dube objects to that allegation. The only evidence to support it is the Affidavit of Grace Moser, who is clearly an interested party. But, more importantly, whether or not an

## THE LAW

(7)      In September of 2008, Congress amended the Americans with Disabilities Act of 1990, effective January 1, 2009.  In doing so, Congress expressly found that disabled persons have historically been subjected to discrimination and that such discrimination continues to be a serious and pervasive social problem.  42 U.S.C. § 12101(a). The stated purposes of the 2008 amendments included providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities and providing clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities.  42 U.S.C. § 12101(b).  To that end, Congress adopted rules of construction regarding the definition of "disability."  Congress stated that, "The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter."  42 U.S.C. § 12102(4)(A).

The definition of "disability" includes being regarded as having a physical or mental impairment that limits one or more major life activities.  42 U.S.C. §12102(1)(C).  "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42. U.S.C. § 12102(3)(A).  However, an individual will not be considered "regarded as disabled" if the actual or perceived impairment is "transitory and minor."

---

accommodation would have been granted is irrelevant.  Ms. Dube is not alleging that she was actually disabled.  She is only alleging that she was regarded as disabled.  A request for an accommodation and/or an employer's response to that request is only relevant to an employee who is actually disabled.  **See** 29 C.F.R. § 1630.2(o)(4); 29 C.F.R. § 1630.9(e).

42 U.S.C. § 12102(3)(B).  "A transitory impairment is an impairment with an actual or expected duration of 6 months or less."  42 U.S.C. § 12102(3)(B).

Under the regulations which have been adopted by the EEOC, implementing the amendments to the ADA, an individual is regarded as disabled if the individual is subjected to a prohibited action because of either an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity.  29 C.F.R. § 1630.2(l)(1).

Prohibited actions include termination.  *Id.*

Moreover, an individual will be "regarded as disabled" any time a covered entity (an employer) takes a prohibited action against the individual because of an actual or perceived impairment even if the entity asserts, or may or does ultimately establish, a defense to the action. 29 C.F.R. § 103.2(l)(2).

But, establishing that an individual is regarded as disabled does not, by itself, establish liability.  Liability is established only when an individual proves that the covered entity discriminated against the individual because of the perceived disability.  29 C.F.R. § 1630.2(l)(3).

## DISCUSSION

### Claire Dube's Claim for Reinstatement

(8)     In her deposition, Ms. Dube was never asked if she is still seeking reinstatement to her previous position with the Texas Health and Human Services Commission or if, assuming the Court orders her reinstated, she would refuse reinstatement.  She was asked whether she is interested in working for the Commission, and she stated "Not at this moment."  **See** Ex. 2 to Defendants' Motion for Summary Judgment, p. 7, ll. 1-20.  She did not state that she no longer wishes to be

reinstated.   In fact, she does wish to be reinstated.   **See** Ms. Dube's Affidavit, Ex. A hereto.

Therefore, her claim for reinstatement is not moot.

### Claire Dube's Arthritis

(9)      Apparently, Defendants' argument is that, if Ms. Dube's arthritis is not actually

disabling, Defendants could not have regarded her as disabled.  That argument is completely contrary

to the law Ms. Dube has referenced above.  In addition, at the time she was fired, Ms. Dube was not

suffering only from arthritis.  She was also suffering from lumbalgia and facet arthrosis.  Lumbalgia,

sometimes referred to as lumbago, is pain associated with the lumbar spine and its contiguous

structures, including the muscles, ligaments, tendons, etc.  **See** Exhibit F to Glen D. Mangum's

Affidavit, Ex. B hereto.  Lumbalgia can be severe and debilitating.  *Id.*  It can come on gradually or

suddenly.  *Id.*

Facet arthrosis is a degeneration of the facet joints in the back part of the spine.  **See** Exhibit

G to Mr. Mangum's Affidavit, Ex. B hereto.  Normally, the facet joints glide over one another,

allowing the spine to flex and extend freely.  *Id.*  But with wear and tear, the joints no longer allow

smooth motion within the spine.  *Id.*

Clearly, both lumbalgia and facet arthrosis can be disabling conditions.

But, as has been stated before, whether Ms. Dube was actually disabled by her conditions is

not really the question.

Defendants argue, "Even if her employer believed that Ms. Dube would permanently suffer

this impairment, it does not objectively meet the 'substantially limiting' standard for establishing a

disability."  **See** p. 11 of Defendants' Motion for Summary Judgment.  That argument is completely

contrary to the law.  As referenced above, the law states that an employee need not prove that the

16

impairment which causes the employer to regard the employee as disabled is **substantially** limiting. The law only requires an employee to prove an impairment that **limits** one or more major life activities.  Ms. Dube has established herein that her arthritis, facet arthrosis, and lumbalgia clearly limited her ability to sit for prolonged periods of time, and that sitting is a major life activity.

Defendants argument on this point is misguided and should be overruled.

### THHSC Regarded Ms. Dube as Disabled
### and She was Discriminated Against on that Basis

(10)   Defendants fault Ms. Dube for not being able to articulate in her deposition why she believes that the Defendants regarded her as disabled.  They contend that her testimony to the effect that she never told her employer that she was disabled and that she never asked for an accommodation is fatal to her case.  Again, the Defendants have confused the issue in this case.  The issue is not whether Ms. Dube claimed to be disabled, and the issue is not whether she ever requested an accommodation.  The issue is whether Defendants regarded her as disabled.

Defendants also fault Ms. Dube for not being able to identify anyone else similarly situated that was treated differently - more favorably - than her.

Attached to counsel's Affidavit in support of this Response, Exhibit B hereto, are copies of letters of termination that were sent by the Commission to several other employees who the Commission claims were treated the same as Ms. Dube and were likewise fired for exhausting their available leave.  **See** Exhibit E to Mr. Mangum's Affidavit, Ex. B hereto.

On October 22, 2009, Carol Medeiros was terminated by Grace Moser.  The letter of termination from Ms. Moser to Ms. Medeiros reflects that Ms. Medeiros exhausted her available paid leave on April 30, 2009, but was not fired until October 22, 2009, 176 days later.  It appears that

17

Ms. Medeiros may have been on FMLA leave until July 3, 2009, but again, she was not fired until October 22, 2009, 111 days later.

It also appears that Ms. Medeiros advised the Commission that she expected to be able to return to work on August 12, 2009 and/or on August 26, 2009, but failed to report for work on either of those dates, and yet the Commission still did not fire her.  It kept giving her chance after chance to return to work, and, only after she failed to take advantage of numerous opportunities did the Commission terminate her.

Georgie Baker was fired on December 21, 2009 by Grace Moser.  On December 10, 2009, her supervisor, Monica Flores, sent Ms. Baker a letter stating that she had exhausted her accrued paid leave on November 20, 2008 (375 days prior to the date of the letter), and had exhausted her FMLA leave on February 12, 2009 (301 days prior to the date of the letter).  Even though a substantial period of time had expired since her available leave was exhausted, and even though Ms. Baker had not returned to work on September 17, 2009, as expected, she was not immediately terminated. Instead, she was given an extra 60 days, or until December 15, 2009, to return to work.  Only after she failed to do so was she terminated, on December 21, 2009 (386 days after exhausting her available paid leave).

Also on December 21, 2009, Susan Stewart was terminated by Grace Moser.  But, as in Ms. Baker's case, Ms. Stewart first was sent a letter from her supervisor, Juanita Rangel, dated December 10, 2009, stating that she had exhausted her accrued paid leave on February 13, 2008 and her FMLA leave on February 11, 2009.  Yet, she was not terminated.  Ms. Stewart apparently returned to work for approximately two (2) weeks, on April 7, 2009, and again exhausted her available paid leave on May 1, 2009.  Still, she was not terminated.  Instead, on May 12, 2009, she was given an opportunity

to apply for extended sick leave or Sick Leave Pool leave, but did not take advantage of either opportunity. Instead, Ms. Stewart remained on leave without pay until June 30, 2009, when she apparently advised Ms. Rangel that she had been released to return to work, without specifying when she actually expected to return to work. It appears that she was expected to return to work on October 8, 2009, but did not do so. **Still**, she was not fired. Instead, Ms. Rangel gave her until December 15, 2009 to return to work. Only after she failed to do so was she terminated on December 21, 2009 (234 days after her available paid leave was exhausted).

Margaret Ann Garza was discharged by Grace Moser on May 6, 2010 (136 days after exhausting her available paid leave, but only 1 day after exhausting her FMLA leave entitlement). Still, on April 1, 2010, Ms. Garza was given an opportunity to advise the Commission as to when she expected to be able to return to work, and, only after she failed to take advantage of that opportunity was she fired.

Norma Guerra was fired on July 13, 2010. Apparently, she was a probationary employee at the time, but there is no indication in her letter of termination that she was discharged because she had exhausted her available paid leave.

Finally, Carmen Thatcher was terminated on September 2, 2010, again by Grace Moser. In her letter of termination, Ms. Thatcher was advised that she exhausted all paid leave available to her on June 28, 2010 and had been in a leave without pay status since then. On August 25, 2010, she was sent a letter directing her to return to work by September 1, 2010, and only after she failed to do so was she fired, 66 days after exhausting her available paid leave.

Clearly, Claire Dube was treated less favorably than several of the individuals whom the Defendants claim were terminated, just like her, after exhausting their available paid leave. Even

19

if the Commission has the discretion, under its Leave Without Pay policy, to decide whether or not to extend an employee's period of leave without pay, the fact of the matter is that the Commission did, in the case of several other individuals similarly situated to Ms. Dube, exercise that discretion in such a manner as to give the affected employee every opportunity in the world to return to work before firing them.  The Commission did not do that for Ms. Dube.

Defendants also cite *Kelly v. Drexel University*, 94 F. 3d 102, 109 (3d Cir. 1996), for the proposition that, even if an employer is aware of an employee's impairment, that does not prove that the employer regarded the employee as disabled or that that perception caused the employer to take an adverse employment action.  **See** Defendant's Motion for Summary Judgment, p. 13.  But Ms. Dube is not arguing that simple awareness of her impairments caused the Defendants to regard her as disabled or to fire her for that reason.  She is arguing that the Defendants' awareness of how her impairments limited her ability to sit for prolonged periods of time, and their awareness of the "undetermined" period of time over which she would be so limited, caused the Defendants to regard her as disabled and caused them to make the decision to fire her.

Ms. Dube would also point out that *Kelly v. Drexel*, and the cases it cites, including the Fifth Circuit case of *Chandler v. City of Dallas*, were all decided under the "old" law, which was much more restrictive than current law in its analysis of claims of disability discrimination.

In conclusion, Ms. Dube has evidence other than her own subjective beliefs that she was discharged because she was regarded as disabled.  Defendant's Motion for Summary Judgment on this ground should be denied.

## Claire Dube's Evidence of Pretext

(11)    Ms. Dube respectfully submits that the best evidence that the Defendants' stated

reason for firing her - leave exhaustion - is pretextual is the fact that, at one time or another, they have offered different reasons for firing her other than leave exhaustion.  In her letter of termination, Ms. Moser stated that Ms. Dube was not suited for her position.  In its response to the EEOC, the Commission stated it was leave exhaustion.  In her deposition, Ms. Moser testified under oath it was because Ms. Dube did not provide an estimated return to work date from her physician.

Not only have all of those reasons been refuted by the summary judgment evidence offered herein, but the law is also clear that, when an employer offers shifting, inconsistent or conflicting reasons for its actions, such inconsistency may give rise to an inference of pretext.  "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Nasti v. CIBA Specially Chemicals Corp.*, 492 F. 3d 589, 594 (5th Cir. 2007) (quoting from *Wright v. West*, 505 U.S. 277, 296, 112 S. Ct. 2482 (1992); **see also** *Velez v. Thermo King*, 585 F. 3d 441 (1st Cir. 2009); *Read v. BT Alex Brown, Inc.*, 72 Fed. Appx. 112, 120 (5th Cir. 2003); *Hernandez v. Hughes Missile Systems Co.*, 362 F. 3d 564, 569 (9th Cir. 2004); *Applebaum v. Milwaukee Metropolitan Sewerage District*, 340 F. 3d 573, 579 (7th Cir. 2003); *Hare v. Denver Merch. Mart*, 255 Fed. Appx. 298 (10th Cir. 2007); *EEOC v. Sears Roebach and Co.*, 243 F. 3d 846, 852-53 (4th Cir. 2001); *Tolbert v. Queens College*, 242 F. 3d 58, 70 (2d Cir. 2001); *Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F. 3d 424, 432 (1st Cir. 2000); *Thurman v Yellow Freight Systems, Inc.*, 90 F. 3d 1160, 1167 (6th Cir. 1996); *Kobrin v. University of Minnesota*, 34 F. 3d 698, 703 (8th Cir. 1994); *Castleman v. Acme Boot Co.*, 959 F. 2d 1417, 1422 (7th Cir. 1992); *Alvarado v. Board of Trustees*, 928 F. 2d 118, 122-23 (4th Cir. 1991); *Schmitz v. St. Regis Paper Co.*, 811 F. 2d 131, 132-33 (2d Cir. 1987).

In addition, Defendants' own records demonstrate that other employees who presumably

were not regarded as disabled were allowed to continue on leave without pay, for substantial periods of time after their available leave was exhausted, before they were fired.

## **CONCLUSION**

(12)    Both the evidence and the arguments in support of Defendants' Motion for Summary Judgment fail miserably.  Clearly, genuine issues of material fact exist, and Defendants have not demonstrated that they are entitled to judgment as a matter of law.  Their Motion should be denied, and a jury should be allowed to hear this case.

Respectfully submitted,

　/s/　Glen D. Mangum
GLEN D. MANGUM
Texas State Bar No. 12903700

924 Camaron
San Antonio, Texas 78212-5111
Telephone No. (210) 227-3666
Telecopier No. (210) 320-3445

**ATTORNEY FOR PLAINTIFF
CLAIRE DUBE**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of June, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Drew L. Harris
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

   /s/ Glen D. Mangum       
GLEN D. MANGUM

23

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **CLAIRE DUBE,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. SA-11-CA-0354-XR** |
| | § | |
| **TEXAS HEALTH AND HUMAN** | § | |
| **SERVICES COMMISSION and** | § | |
| **THOMAS M. SUEHS, Executive** | § | |
| **Commissioner of the Texas Health and** | § | |
| **Human Services Commission,** | § | |
| **Defendants.** | § | |

**<u>ORDER</u>**

On this day came on for consideration Defendants' Motion for Summary Judgment, and Plaintiff's Response thereto, and the Court finds that genuine issues of material fact exist, which preclude this Court from granting summary judgment, and that Defendants have not shown that they are entitled to judgment as a matter of law.

It is accordingly ORDERED that Defendants' Motion for Summary Judgment shall be, and is hereby, DENIED.

SIGNED and ENTERED this _____ day of _____, 2012.


_____
XAVIER RODRIGUEZ
United States District Judge