# In the United States District Court for the Western District of Texas

| | |
|---|---|
| CLAIRE DUBE § | |
| § | |
| v. § | |
| § | SA-11-CV-354-XR |
| TEXAS HEALTH AND HUMAN § | |
| SERVICES COMMISSION AND | |
| THOMAS M. SUEHS | |

### ORDER

On this day came on to be considered Defendants' motion for summary judgment (dkt no. 27).

### Background

Plaintiff's Allegations

Plaintiff Claire Dube was hired by the Texas Health and Human Services Commission ("HHSC") on September 14, 2009, and remained employed there until May 13, 2010, at which time she was advised by Melissa Torres, her supervisor, that she was being discharged. Plaintiff alleges that she was absent from work during that time approximately eleven weeks "being treated for and attempting to recuperate from a serious medical condition that had disabled her from working during that period of time." Amended Complaint ¶ 8. Plaintiff alleges that on May 6, 2010, she advised HHSC that she could return to work on May 24, 2010, but HHSC "concluded that she was permanently disabled and decided to discharge her rather than await her return to work." *Id*.

Factual Background

Plaintiff alleges that on or about February 17, 2010, she began missing work "due to severe pain in my lower back." On February 18, she was seen at a medical clinic and was given

1

an assessment of "scoliosis (and kyphoscoliosis), idiopathic." She was prescribed Ibuprofen and refereed to an "ortho." On February 23, she again visited the clinic and was prescribed Ibuprofen, Ultram and Skelaxin for muscle spasms. Plaintiff was provided a letter that stated she would not be able to "return to work at this time due to Muscle Spasms related to Scoliosis. Return to work must be authorized by Orthopedics." Plaintiff's supervisor was informed of the referral to an orthopedist and that Plaintiff would be out until further notice.

On March 24, Arvo Neidre, M.D. completed a form stating that Plaintiff was diagnosed with "Lumalgia with facet arthritis," that she is unable to sit for long periods of time, and that she would be administered physical therapy and anti-inflammatories. Dr. Neidre opined that Plaintiff would be able to return to work in one or two months.

Plaintiff called her supervisor on March 26 and informed her that a MRI indicated that she had arthritis in her back and a herniated disk and that Dr. Neidre expected that she would be out of work for six to eight weeks. She also informed her supervisor that she was applying for short term disability benefits.[1]

During the March 26 telephone conversation, Ms. Torres advised Plaintiff that she had exhausted her paid leave as of March 3, but that if Plaintiff completed a Form WH-380, that could be used to request additional leave from the Sick Leave Pool.

On March 29, Plaintiff met with her supervisor and provided her a copy of the disability application she submitted to the disability insurance carrier. Ms. Torres provided Plaintiff a letter stating that she needed to provide medical documentation to explain her absences, that she was not eligible for FMLA leave because she did not meet the employment tenure eligibility, and that Plaintiff needed to complete the WH-380 to see if she could receive Sick Leave Pool.

---

[1] Plaintiff's affidavit in opposition to the motion for summary judgment at p. 4.

Plaintiff was warned that if she did not qualify for Sick Leave Pool or extended sick leave she could be subject to discharge from her employment.

Dr. Neidre completed the WH-380 on April 6, stating that the probable duration of Plaintiff's condition was "undetermined at this time," that Plaintiff was unable to sit more than 20 minutes at a time without pain, and that she was to continue with physical therapy. A copy of the form was given to Ms. Torres on April 9.

On April 22, Ms. Torres was notified by administrators of the sick leave pool that Plaintiff's request had been denied because Plaintiff's condition was not "an acute or prolonged illness usually considered to be life-threatening" and thus not a catastrophic illness or injury as required by the sick leave pool.

Plaintiff was informed by Ms. Torres on May 6 that the request for sick leave pool had been denied and that because Plaintiff had exhausted all leave Ms. Torres would begin processing her discharge from employment. Plaintiff replied that she would be completing physical therapy on May 22 and would be meeting with her physician thereafter to provide a release to return to work.

In a letter dated May 13, 2010, Grace Moser, Regional Director for HHSC, informed Plaintiff that she was discharged from her employment.[2]

On August 30, 2010, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), wherein she alleged that HHSC discharged her from her employment because HHSC regarded her as being disabled. Defendant responded that Plaintiff was discharged because she was unable to return to work and had exhausted all leave to which she was entitled.

---

[2] The letter stated a probationary may be dismissed for any non-discriminatory reason at any time during her probationary period, if it was determined the employee was not suited for the assigned position.

Plaintiff brings a claim against HHSC, alleging she was improperly discharged because HHSC regarded her as being disabled, in violation of Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794. She also sues Thomas M. Suehs in his official capacity, alleging that HHSC improperly terminated her because it regarded her as disabled in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, and seeking prospective relief pursuant to *Ex Parte Young*.

### Defendant's motion for summary judgment

Defendant argues that Plaintiff's ADA claim seeking prospective relief (job reinstatement) should be dismissed as moot because Plaintiff no longer is requesting her former job.

Defendant further argues that Plaintiff's Rehabilitation Act claim should be dismissed as a matter of law because there is no evidence that Defendant "regarded" Plaintiff as disabled. In addition, Plaintiff cannot establish causation because she was "legitimately terminated for leave exhaustion."

### Summary Judgment Standard

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 510 U.S.

859 (1993). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

**Analysis**

Reinstatement Claim

With regard to Plaintiff's reinstatement claim, Plaintiff testified during her deposition that she has now moved to Alaska, has secured employment there, and "at this moment" is not interested in coming back to work at HHSC.[3] In response to Defendant's motion, she stated in an affidavit that "while I am happy with my current job at the State of Alaska, and I do not really like the idea of having to move back to Texas, if I win this case, and I am eligible for reinstatement, I want to be reinstated."

Plaintiff cannot create issues of fact by contradicting her previous sworn deposition testimony. *Bouvier v. Northrup Grumman Ship Sys., Inc.*, 350 Fed. Appx. 917 (5th Cir. 2009).

Plaintiff waived her claim of reinstatement during her deposition. Defendant's motion on this claim is granted.

Rehabilitation Act "Regarded As" Claim

The Rehabilitation Act incorporates the standards of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111 et seq., ("ADA") for determining whether there has been impermissible discrimination. *See* 29 U.S.C. § 791(g). The ADA prohibits discrimination against "a qualified individual on the basis of a disability in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

---

[3] Plaintiff's deposition at pp. 7, 9.

An ADA claim has three components: "[A] plaintiff must prove that 1) he has a 'disability'; 2) he is 'qualified' for the job; and 3) an adverse employment decision was made solely because of his disability." *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1996) (per curiam) (*citing Rizzo v. Children's World Learning Ctrs., Inc.*, 84 F.3d 758, 763 (5th Cir. 1996)).

The term "disability" means, with respect to an individual--

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1).

On September 25, 2008, President George W. Bush signed the ADA Amendments Act ("ADAAA"). The ADAAA reversed various Supreme Court decisions interpreting Title I of the ADA and required a broader application of the ADA. The amendments became effective on January 1, 2009. Inasmuch as Plaintiff was hired on September 14, 2009 and discharged on May 13, 2010, the Court will apply the ADA amendments.

The ADAAA makes it clear that under the "regarded as" prong, an employer need only perceive that the individual has a physical or mental impairment, thus overruling court decisions requiring a plaintiff to show that the employer regarded him or her as being substantially limited in a major life activity.[4] *See e.g., Darcy v. City of New York*, 2011 WL 841375 (E.D. N.Y. March 8, 2011) ("Thus, under the plain language of the statute, an employee making a 'regarded as'

---

[4] "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

6

claim is not required to show that the disability he is perceived as suffering from is one that actually limits, or is perceived to limit, a major life activity. To the contrary, cognizable ADA injury occurs when an employer takes an adverse employment action against an employee because of its perception that the employee suffers from a recognized disability. Defendants cling to the notion that ADA protections are not triggered unless there in fact exists an underlying impairment, but this theory is irreconcilable with the plain statutory language. '[B]eing regarded as having' an impairment is singled out as a distinct, alternative definition of disability, and individuals making such a claim are expressly relieved of having to show an actual or the perception of an actual impairment.").

The ADAAA, however, restricts the coverage of individuals who are "regarded as" disabled by excluding individuals with a "minor" and "transitory" condition (e.g., a condition that lasts, or is expected to last, six months or less).[5]

Under the final regulations implementing the ADAAA, an individual is "regarded as having such an impairment" if the individual is subjected to a prohibited action because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity. 29 C.F.R. § 1630.2(l).

HHSC has established that Plaintiff was discharged because she was absent from work and had exhausted all her leave.[6] Although Plaintiff expected that her physical therapy sessions would end May 22, it is undisputed that Plaintiff never provided her employer a release to return to work or expected date of return to work prior to her discharge on May 13. Plaintiff suggests that HHSC should have continued Plaintiff on unpaid leave rather than discharging her.[7] It is

---

[5] "Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B).
[6] Deposition of Melissa Torres at p. 70; Deposition of Grace Moser at p. 15.
[7] Deposition of Melissa Torres at p. 143.

uncontested that Plaintiff was not eligible for FMLA leave and no other legal requirement mandated that Plaintiff be extended additional unpaid leave.  Plaintiff had already been extended unpaid leave for approximately three months.  Ms. Torres testified that in her experience when staffing shortages exist and a business need requires positions to be staffed, she is not aware of instances where employees are provided indefinite unpaid leave.[8]

Plaintiff admits that she never told her employer that she was permanently disabled,[9] or that she required any accommodations.[10]  Plaintiff further admits that no one from HHSC said "anything to [her] that made [her] think they thought [she] was disabled." [11]

Plaintiff merely relies upon her subjective belief and conclusory statements to argue that she was "regarded as" disabled.  Plaintiff states that her supervisor regarded her as disabled because her supervisor knew that she had facet arthrosis.[12]  She then states that "they didn't want to accommodate me after I went through my physical therapy."[13]  She acknowledges, however, that she did not ask for any accommodations.[14]  Thereafter, she argues that her evidence that she was "regarded as" disabled was the fact that she was fired.[15]  Even in light of the ADA amendments, Plaintiff fails to create a genuine issue of fact on whether she was "regarded as" disabled.  Subjective belief and conclusory allegations of discrimination are insufficient to defeat summary judgment.  *Hervey v. Mississippi Dept. of Educ.*, 404 Fed. Appx. 865 (5th Cir. 2010).  Defendant's motion for summary judgment is granted as to this claim.

---

[8] Id. at p. 146.
[9] Plaintiff's deposition at p. 21.
[10] Id. at pp. 21-22.
[11] Id. at p. 77.
[12] Id. at p. 25.
[13] Id. at p. 26.
[14] Id.
[15] Id. at pp. 28-29, 73-75.

## Conclusion

Defendants' motion for summary judgment (dkt no. 27) is granted. The Clerk is directed to enter judgment against Plaintiff and in favor of Defendants on all claims.

It is so ORDERED.

SIGNED this 25th day of June, 2012.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE